IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COPPER INNOVATIONS GROUP, LLC, )
)
            Plaintiff, ) Civil Action No. 07-1752
)
vs. )
) Judge David S. Cercone
NINTENDO CO., LTD. and NINTENDO )
OF AMERICA INC., )
)
            Defendants. )

## MEMORANDUM ORDER

AND NOW, on this 11th day of May, 2011, after de novo review of the record and upon due consideration of [82] the Magistrate Judge's Report and Recommendation filed on October 6, 2009, [83, 84] Plaintiff's and Defendants' objections and [86, 87] their respective responses thereto, IT IS ORDERED that the Report and Recommendation as augmented below is adopted as the claim construction opinion of the Court.

**I.**    **Plaintiff's Objections**

Plaintiff raises five objections to the Report and Recommendation's claim constructions. Its arguments are, however, all variations on the objection that the Report and Recommendation improperly imported limitations from the specification into the claims.

*1. Identification Number*

The first construction that Plaintiff objects to is "identification number." Plaintiff argues that requiring the "identification number" to be "hardware encoded" is an impermissible limitation because it imports a limitation from the a preferred embodiment that is not present in the claims. In particular, Plaintiff takes issue with the Report's statement that the patent does not contain language which expressly states that there are alternatives to a "hardware encoded identification number." (*See* Docket No. 82 at 21). Plaintiff first points to the section heading "Description of the Preferred Embodiments" as indicating that "hardware encoded" is just a preferred embodiment. *See* U.S. Patent No. 5,640,152 col. 5, ln. 23-24. ('152 Patent) Second,

Plaintiff points to the final paragraph of the specification stating that "it should be understood that many changes and modifications may be made therein without departing from the scope of the appended claims." '152 Patent col 11., ln. 62-64.

The Report did recognized that claims are not to be limited to preferred embodiments and that Plaintiff's contention was that "hardware encoded" is simply a element of a preferred embodiment of the invention. However, the Report disagreed with this contention on the basis that specification stated that "*[e]very* transmitter unit has a unique hardware encoded identifying number." '152 Patent col. 7, ln. 5-6 (emphasis added). Furthermore, the Report discussed that the person having ordinary skill in the art would not read the specification to allow for the identification number to be otherwise "hardware encoded," *i.e.* "calculated by software" or otherwise manipulated as suggested by Plaintiff. The Report's analysis, therefore, did not fail to take into account that aspects of the specification are merely preferred embodiments. Rather, the Report's recommendation is based on how a person having ordinary skill in the art would read the claims in light of the entire specification, not simply a section heading and boilerplate language of alternative embodiments.

Although "hardware encoded" is used only once in the specification, the Court agrees with the Report that nothing in the intrinsic evidence would lead a person having ordinary skill in the art to understand that the identification number found in "[*e]very* transmitter" could be anything other than "hardware encoded." The proposition that the "unique identification number" could be calculated by software or somehow changed or manipulated from outside the transmitter is not supported by the intrinsic evidence. (*See* Docket No. 82 at 21.) There simply is no intrinsic support to require a person having ordinary skill in the art to read out "hardware encoded" but not "unique" from the line in the specification "[e]very transmitter unit has a unique hardware encoded identifying number." '152 Patent col 7, ln. 5-6. As a result, Plaintiff's objection to "Identification Number" is overruled.

*2. Previously Designated & Designating*

Plaintiff's second objection is to the Report's construction of "previously designated" and "designating." Plaintiff argues that the Report erred in finding that the "designating" step only designates the identification number in the connect packet as the "previously designated identification number." Essentially, Plaintiff argues that the Report erred in recommending a narrower construction that would not allow for a different number to be designated "in response" to the identification number found in the connect packet.

Plaintiff's contention that more than one number could be used to identify a transmitter has no support within the specification. The Report correctly found that the specification does not contain any of the additional steps suggested by Plaintiff. Furthermore, the "designating" is done "by" transmitting the connect data packet which does not require the inclusion of a step where the receiver is "designating" "in response to" the connect data packet. Indeed, it appears that Plaintiff's supposed alternative embodiments of using more than one number to designate the identification number is merely an additional step to what is already present in the claim under the recommended construction. As a result, Plaintiff's objection to "previously designated" and "designating" is overruled.

*3. Connect Packet & Connect Data Packet*

Plaintiff's third objection is to "connect packet" and "connect data packet" and the Report's inclusion of the requirement that they contain "status data." Again, Plaintiff argues that the Report improperly imported limitations from the specification into the claims. In particular, Plaintiff points out that only Claim 5 contains the term "status data" and the other claims involving "connect packet" do not have the element of "status data" present.

The specification states, however, that "[e]very packet also contains a status byte and the two-byte identifying number of the transmitter unit." '152 Patent col. 11, ln. 4-5. The Report further points out that it is undisputed that the "connect packet" is a type of data packet, again which the specification states that contains at least the identification number and status data. As

3

a result, the Report correctly concludes that a person having ordinary skill in the art would understand "connect packet" to contain "status data." Since the Report did not import elements of a preferred embodiment into the claims, Plaintiff's objection is overruled.

   *4. Rejecting*

Plaintiff's fourth objection is to "rejecting." It argues that there should be a different construction for the term's use in Claim 1 and Claim 4. The Report recommends that Plaintiff's construction for "rejecting" be adopted as it provides the plain meaning of the term. Plaintiff's objection is that the Report uses the remainder of the language from Claim 1 in construing "rejecting" which is slightly different from Claim 4. There is no indication that "rejecting" in either claim has a different meaning or that rejecting should have separate constructions for each claim. Rather, the most useful construction for the jury is to simply construe "rejecting" and allow the remainder of the language in each of Claim 1 and 4 to speak for itself. As a result, the Court will augment the Report's construction as follows: "Rejecting" means "refusing to accept."

   *5. Different*

Plaintiff's final objection is that while the Report adopted a construction for the disputed terms in Claim 2, the Report did not adopt a construction for the similar language found in Claim 4. The Report recommended that the language from Claim 2 "different from the identification numbers generated by all other transmitters of said plurality of transmitter" means "the unique hardware encoded number identifying a specific transmitter is not the same as the unique hardware encoded number in all other transmitter." (Docket No. 82 at 39). This construction simply incorporates the construction for the term "identification number" with the construction for "different." While the Court agrees with the Report's construction for "identification number", for the sake of allowing the claim language and other claim constructions to speak for themselves, the Court will decline to construe the entire phrase of Claims 2 and 4 and rather will only provide a construction to the term "different." The parties do not

otherwise dispute that "different" means "not the same as." Therefore the Court's construction is "different" means "not the same as."

## II. Defendants's Objections

Defendants also filed objections to the Report and Recommendation, which the Court addresses in turn.

### 1. *Transmitting*

Defendants' first objection is to the Report's construction of "transmitting." The Report recommended that the related terms "transmitter" and "transmission" be construed as follows:

> "transmission" means "a data packet sent from a transmitter"
>
> "transmitter" means "a device for sending data packets."

(Docket No. 82 at 32-35.) For "transmitting" the Report's construction is "sending a signal from transmitter." Defendants contends for the sake of consistency and to avoid confusion that "data packet" should be used in the construction of "transmitting" rather than signal.

Although the Court is cognizant of Defendants' concern for consistency, the construction recommended in the Report accounts for Defendants' concern with the inclusion of the term "transmitter," which as stated above uses "data packet." As a result, it would be redundant to include "data packet" a second time in the construction. Furthermore, reading Defendants' proposed construction with the remainder of the Claim language could equally cause the confusion that they purportedly are seeking to avoid. In each instance, the Claims specify what exactly is being transmitted, so there is no need to risk confusing the jury through a needlessly complex construction. Since the Report's construction reflects the plain meaning of "transmitting" as would be understood by a person having ordinary skill in the art, the Defendants' objection is overruled.

### 2. *All Equivalents*

Defendants' next objection is to the use of "all equivalents" in the means plus function claims. In each of the Report's constructions for the means plus function claims, the report construed the claims to include "all equivalents" of the means. Defendants argues that the use of

5

"all" does not reflect the statutory language of means plus function claims and that it could lead to confusion for the jury as to what equivalents fall within the scope of the claims.

It is apparent that the Report did not seek to enlarge the scope of equivalents beyond what 35 U.S.C. 112 ¶6 allows. The statutory language for means plus function claims states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification *and equivalents thereof*.

35 U.S.C. 112 ¶6 (emphasis added). In order to avoid the risk of confusing the jury and to exactly reflect the statutory language exactly, the Court will remove "all" from the Report's means plus function constructions.

   *3. Comparing*

Defendants' third objection is to the Report's construction of "comparing." The Report recommended that "comparing" as found in Claim 1 means "determining the differences or similarities in the compared numbers." For Claim 2, which is a means plus function claim, the parties agreed that the function of "means for comparing the identification number" is:

> comparing the identification number in each transmission received by the equipment with the identification number received with the most recently received connect packet and rejecting each transmission which does not contain said identification number received with the most recently received connect packet.

(Docket No. 61-1 at 55). The corresponding structure in the specification identified in the Report is "a microcontroller executing a compare instruction, and all equivalents thereof."

Defendants' argument is that the "compare instruction" identified as the corresponding structure in Claim 2 is inconsistent with the "comparing" term construed in Claim 1 and that the "compare instruction" should be given a construction to make it consistent with "comparing" in Claim 1.

The Court disagrees with Defendants' contention that "compare instruction" requires a separate construction because the parties agreed upon function for Claim 2 already includes the

6

term and will necessarily incorporate the construction of "comparing." The agreed upon function uses the term "comparing" and it will be read as being consistent with the construction of "comparing" in Claim 1. As to the identified structure of Claim 2, as discussed below, that construction will be modified, thus rendering the rest of Defendant's objection moot.

*4. Means Plus Function Claims*

Defendants' final objection is to clarify a few points concerning the means plus function claims. Defendants' first concern is that the Report abbreviated the agreed upon functions of the claims. In the Court's claim construction order that follows, the entire agreed upon function will be given.

Defendants' second concern is that all the corresponding structure identified in the Report's discussion of whether the means plus function claims were indefinite was not completely reproduced in the conclusion section of the Report. Defendants have provided in their brief a chart of the corresponding structure that was left out and is needed to make the Report's construction consistent with its analysis. Although Plaintiff opposes Defendants' objection, in its brief it cites to the same structure in the specification upon which the Report relied and that Defendants now ask to be made a part of the construction. As a result, the Court will sustain Defendants' objection and add the structure left out of the Report's recommendation to the claim construction.

**III. Conclusion**

Consistent with the Report and Recommendation as augmented above, for the purposes of claim construction the disputed terms are construed as follows:

1. "**Equipment**" means "any computer equipment or device having a variable and capable of producing a change therein in response to an electrical, infrared or electronic signal."

2. "**Previously designated identification number**" means "the identification number of a transmitter sent to the equipment in a connect packet and that is used by the equipment for comparison with the identification number of transmissions

subsequently received."

3. "**Designating**" means "establishing the identification number of a particular transmitter by transmitting a connect packet from that transmitter to the equipment."

4. "**Identification number**" means "a unique hardware encoded number that identifies a specific transmitter."

5. "**Connect data packet**" and "**connect packet**" means "a data packet containing the hardware encoded identification number of that specific transmitter, data establishing it as a connect type packer, and status data."

6. "**Transmitting**" means "sending a signal from a transmitter."

7. "**Transmission**" means "a data packet sent from a transmitter."

8. "**Transmitter**" means "a device for sending data packets."

9. "**Comparing**" means "determining the differences or similarities in the compared numbers."

10. "**Rejecting**" means "refusing to accept."

11. "**Different**" means "not the same as."

12. **Function** "transmitting an identification number as a part of each transmission therefrom which is different from the identification numbers generated by all other transmitters of the said plurality of transmitters."
    **Structure** "an infrared signal source, and a microcontroller executing instructions for forming protocol packets which include a byte stream, a status byte and the two-byte identification number that are transmitted through the infrared signal source, and equivalents thereof."

13. **Function** "transmitting an identification number as a part of each transmission from said device."
    **Structure** "an infrared signal source, and a microcontroller executing instructions for forming protocol packets which include a byte stream, a status

byte and the two-byte identification number that are transmitted through the infrared signal source, and equivalents thereof."

14. **Function** "transmitting a connect packet."

    **Structure** "a switch, an infrared signal source, and a microcontroller executing instructions for forming a connect packet that is transmitted through the infrared signal source in response to the switch, and equivalents thereof.

15. **Function** "storing the identification number of the transmitter in random access memory (RAM)."

    **Structure** "a microcontroller executing the instructions to read the identifying number from its hardware-encoded location and store it in random access memory, and equivalents thereof."

16. **Function** "storing an identification number associated with the device"

    **Structure** "a microcontroller executing the instructions to read the identifying number from its hardware-encoded location and store it in random access memory, and equivalents thereof."

17. **Function** "storing the identification number in random access memory (RAM)"

    **Structure** "a microcontroller executing the instructions to read the identifying number from its hardware-encoded location and store it in random access memory, and equivalents thereof."

18. **Function** "comparing the identification number in each transmission received by the equipment with the identification number received with the most recently received connect packet and rejecting each transmission which does not contain said identification number received with the most recently received connect packet."

    **Structure** "a microcontroller detecting a Pulse Code Modulated Infrared (IR) data stream sent from a transmitter and executing a single step of subtraction, and equivalents thereof."

The Report and Recommendation dated October 6, 2009, as augmented herein is adopted as the opinion of the Court and an order implementing the term construction set forth above will be issued.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: All Counsel of Record

    Via: CM/ECF Electronic Filing